J-S08034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: Y.A.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.L.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1255 MDA 2021 |

Appeal from the Decree Entered August 31, 2021
In the Court of Common Pleas of York County Orphans' Court at No(s):
2021-0144

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MARCH 29, 2022**

M.L.B. (Father) appeals from the decree entered in the York County Orphans' Court, which involuntarily terminated his parental rights to Y.A.C. (Child), born in July 2015.  Father complains the court committed reversible error when it terminated his rights because Child's needs and welfare could have been met by giving custody to a paternal aunt, thereby preserving his relationship with Child.  For the reasons below, we are constrained to vacate the termination decree and remand for proceedings consistent with this memorandum.

The underlying facts that led to the termination of Father's parental rights are as follows.[1] Child is the son of Father and T.N.C. (Mother),[2] who are not married. *See* Motion for Judicial Notice, 8/27/21, at 1. In January 2020, Child came into the custody of CYF on an emergency basis. *See id.* at 2. The order was based on evidence which demonstrated that continuation or return of Child to the home of Mother and Father was not in the best interest of Child. *See id.* Child was then placed in foster care, where he remains with a half-sibling. *See id.*; N.T., 8/31/21, at 60.

At a hearing on January 28, 2020, the court adjudicated Child dependent and awarded legal and physical custody of Child to CYF. *See* Motion for Judicial Notice at 2. Father did not attend this hearing and he did not file an appeal. *See id.* at 3. His whereabouts were unknown to CYF until May 2020 when he was discovered to be in the York County prison, where he was being held for charges of criminal homicide and possession with intent to deliver. *See* N.T. at 55, 57.

---

[1] We note the facts are gleaned from the August 31, 2021, termination hearing and York County Office of Children, Youth and Families (CYF)'s motion for judicial notice. The orphans' court entered an order on August 31, 2021, granting CYF's motion and stating that it would be taking judicial notice of all averments in the motion. *See* Order of Court, 8/31/21.

[2] The court also entered an order that involuntarily terminated Mother's rights on August 31st. Mother did not appeal the court's decree.

The court held numerous permanency review hearings between July 2020 and May 2021. *See* Motion for Judicial Notice at 3-10. Due to Father's incarceration, he did not make any progress toward alleviating the circumstances that resulted in Child being dependent. *See id.* at 9. His requests for visits and for telephone visits with Child were denied by the York County Prison. *See* N.T. at 50, 65-66. CYS also provided Father with a Family Service Plan relating to Child which he did not object to until January 2021, wherein he raised concerns about certain family findings and requested visitation for the first time. *Id.* at 55-56. Nevertheless, Child knows Father and recalls living with him. *Id.* at 58. Father provided no monetary support or gifts to Child but did send some clothing items. *Id.* He also never requested any photographs of Child. *Id.*

At some point during the dependency proceedings, Father submitted a request, through the Interstate Compact for the Placement of Children (ICPC), to assess his sister as a possible resource for Child. *See* N.T. at 52. The sister was located in North Carolina. *See id.* The sister traveled to Pennsylvania and met with Child two times for three hours per visit. *See id.* at 53. The CYF caseworker stated the visits went "well" with the second visit being "a little bit more natural and easy going." *Id.* at 52-53

On June 18, 2021, CYF filed a petition for involuntary termination of both Mother's and Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8).

The court held a termination hearing on August 31, 2021. Child, then age six, was represented during the proceeding by T.L. Kearney, Esquire, whom the court appointed to represent Child as legal counsel. *See* Order of Court, 6/30/21.

At the hearing, CYS indicated it was not going move Child upon approval of the ICPC because it "would like to see th[e] relationship [with Father's sister] explored more before [it] would consider placement in her care." N.T. at 54. Moreover, CYS stated while it did receive verbal approval, it never received an official transmittal with Pennsylvania state approval regarding Father's sister because her local ICPC office did not send the transmittal through the proper channels. *Id.* at 70, 73. Father requested the court delay its decision pending the formal outcome of the ICPC process. *Id.* at 101-02. The court denied his request but noted his position – that he desired his sister to have custody. *Id.* at 102.

That same day, the court then terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8). *See* N.T. at 110-20. The court also found termination will best serve Child's developmental, physical, and emotional needs and welfare, pursuant to 23 Pa.C.S. § 2511(b). ***See id.***

Father filed a timely *pro se* appeal. Because Father was represented by court-appointed counsel (Scott A. Beaverson, Esq.), this Court entered counsel on the appellate docket and, *inter alia*, directed him to file a concise statement pursuant to Pa.R.A.P. 1925(b) with the orphans' court. In

- 4 -

response, counsel filed a December 15, 2021, "Application to Address Pro Se Status of Appellant," in which he asserted that he was appointed as counsel for Father solely for the related dependency matter and not for the instant termination of parental rights matter. The orphans' court confirmed that counsel was not court-appointed to represent Father in the present matter. On December 20, 2021, this Court entered an order directing the orphans' court to appoint counsel, stating that at its discretion, the court may appoint Attorney Beaverson to represent Father. One day later, the orphans' court appointed Attorney Beaverson, and directed that counsel filed a Rule 1925(b) concise statement. Counsel complied with the order on January 3, 2022. The orphans' court issued a Pa.R.A.P. 1925(a) opinion on January 11, 2022.

On appeal, Father raises the following issue:

Did the [orphans'] court commit reversible error in involuntarily terminating the parental rights of [Father] when [Child]'s needs and welfare could have been met by giving custody to a paternal aunt and preserving the parent/child relationship?

Appellant's Brief at 5.

In his sole issue, Father contends the court erred by terminating his rights under 23 Pa.C.S. § 2511(b) because a family member, his sister, was purportedly available to care for Child. Father concisely states:

In the case at bar, while Father's incarceration and pending charges caused him to be unavailable as a resource for [ ] Child, he offered his sister in North Carolina as a resource for [ ] Child. A formal investigation under the ICPC was undertaken and informal approval was had, awaiting only final paperwork for approval. The [a]unt from North Carolina traveled to Pennsylvania for two visits with [ ] Child, and at least the second

- 5 -

of those went well. Giving custody to the [a]unt in North Carolina until Father could become available to parent once again could have preserved the unity of this family.

Appellant's Brief at 9.

We note the standard of review of an order terminating parental rights:

[O]ur scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Before we may address the merits of Father's claim, we must first determine *sua sponte* the representation of Child's guardian *ad litem* (GAL)/Legal Counsel, Attorney Kearney. *See In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020).

Section 2313(a) of the Adoption Code states:

**(a) Child.—**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

"[W]here the orphans' court has appointed a single attorney to serve as [GAL] and legal counsel to represent both the child's best interests and legal interests, [our Supreme Court] concluded **an appellate court should review *sua sponte* whether the court made a determination that those interests did not conflict**."

> *In re P.G.F*, ––– Pa. –––, 247 A.3d 955, 964–65 (2021). The
> Court "cautioned that 'appellate review of this question does not
> involve second–guessing whether GAL/Counsel in fact had a
> conflict but solely whether the orphans' court made the
> determination in the first instance.'" *Id*. at 965 (quoting *K.M.G.*,
> *supra* at 1235-1236) (cleaned up)).

*Interest of A.J.R.O.*, __ A.3d __, __, 2022 WL 364005, at \*6 (Pa. Super. Feb. 8, 2022) (emphasis added).

In *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), the Pennsylvania Supreme Court provided the definitions of best and legal interests as set forth in the comment to Pa.R.J.C.P. 1154, which read:

> "Legal interests" denotes that an attorney is to express the child's
> wishes to the court regardless of whether the attorney agrees with
> the child's recommendation. "Best interests" denotes that a [GAL]
> is to express what the [GAL] believes is best for the child's care,
> protection, safety, and wholesome physical and mental
> development regardless of whether the child agrees.

*L.B.M.*, 161 A.3d at 174 n.2 (citation omitted).

Turning to the present matter, a review of the record reveals the following. Attorney Kearney was appointed as Child's GAL in the underlying dependency proceeding. *See* N.T. at 167-68. In the June 30th order, the court appointed Attorney Kearney as **legal counsel** for the termination proceeding. Then, at the August 31st proceeding, counsel was referred to as Child's GAL as well as representing Child's legal interests. *Id.* at 7, 80. Moreover, during argument, Attorney Kearney first stated that he believed "it [was] in the best interest of [Child] to have [the termination] petition . . . granted." *Id.* at 106. Attorney Kearney then stated that as Child's "legal

counsel," he had the opportunity to speak with Child in his current home environment as well as observe Child interacting with his foster parents and sibling. *Id.* Attorney Kearney also noted that Child, who was six years old at the time of the hearing, did not have a full understanding of the legal process but had expressed to counsel his preferred outcome. *Id.* at 106-07.[3]

Based on our review of the record, there is no indication that either prior to the hearing or at the hearing, "the orphans' court made the requisite determination" that then-six-year-old Child's "legal and best interests did not conflict." *A.J.R.O.*, ___ A.3d at ___, 2022 WL 364005, at *6. As such,

> [s]ince we cannot determine from the certified record whether the orphans' court fulfilled its [Section] 2313(a) duty to 'determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child[,]' we cannot fulfill our duty to *sua sponte* 'verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict.'

*Id.*, *quoting* **K.M.G.** 240 A.3d at 1236.[4]

---

[3] Attorney Kearney is also identified as Child's GAL/Legal Counsel on the cover page of the Appellee's Brief. Counsel co-signed the Appellee's brief.

[4] We note this matter is distinguishable from a situation where Section 2313 is satisfied by a GAL representation of a child, in which "the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal," and therefore, "there can be no conflict between the child's legal interests and his or her best interests." **In re T.S.**, 192 A.3d 1080, 1092 (Pa. 2018). Here, as noted above, Child is six years old, verbal, and expressed his preferred outcome.

Therefore, in accordance with **_A.J.R.O._**, we are compelled to vacate the termination decree and remand for further proceedings. On remand, we direct the orphans' court to fulfill its obligation pursuant to Subsection 2313(a) and determine whether Attorney Kearney may represent the dual interests of Child. If the court determines that no conflict exists, the court shall re-enter its August 31, 2021, termination decree as to Father. If the court determines there is a conflict between Child's legal and best interests, the court shall appoint separate legal counsel and conduct a new termination hearing as to Father to provide legal counsel an opportunity to advocate on behalf of Child's legal interests. **_See A.J.R.O._**, ___ A.3d at ___, 2022 WL 364005, at *6.

Decree vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2022